J-A25014-17

2019 PA Super 43

| DANIEL MAISANO & PATRICIA MAISANO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| MARSHA AVERY, HAMLET VILLAS,LLC | |
| Appellees | No. 3877 EDA 2016 |

Appeal from the Judgment Entered December 7, 2016
In the Court of Common Pleas of Chester County
Civil Division at No: No. 15-04544

BEFORE:  STABILE, DUBOW JJ., and STEVENS, P.J.E.*

OPINION BY STABILE, J.:                    **FILED FEBRUARY 15, 2019**

Appellants Daniel and Patricia Maisano ("Maisanos"), husband and wife, appeal from the December 7, 2016 judgment entered in the Court of Common Pleas of Chester County ("trial court") in this action for specific performance of a real estate sales agreement, challenging *inter alia*, damages awarded in their favor and against Appellee Marsha Avery ("Avery").  Upon review, we affirm in part, reverse in part, and remand for further proceedings.

The facts and procedural history underlying this case are undisputed.[1] Avery owned approximately twenty-one acres of land directly north of the

---

* Former Justice specially assigned to the Superior Court.

[1] Unless otherwise specified, these facts come from the trial court's November 9, 2016 decision issued pursuant to Pa.R.C.P. 1038, and its January 19, 2017 opinion filed pursuant to Pa.R.A.P. 1925(a). We also shall refer to facts undisputed by the parties as gleaned from the record.

Maisanos' home. Avery's land was bounded to the north by a private lane, which had access to a public street named Bayard Road. Avery sought to develop her land into several single-family home lots. Because of limited access from the private lane, the yield from the twenty-one acres was three lots. To increase the yield to nine lots, Avery sought to gain access to the land from Indian Springs Road located to the south. The Maisanos' home, however, stood between Avery's twenty-one acres of land and Indian Springs Road. The Maisanos rejected Avery's request for an easement through their property, but expressed interest in selling their home to her.

As a result, on December 21, 2004, the parties executed a sales agreement (the "Agreement") pursuant to which Avery agreed to purchase the Maisanos' residential real estate (the "Property"), located at 103 Indian Springs Road, for $1,350,000.00. Avery paid them $150,000.00 upon execution of the Agreement. The remaining $1,200,000.00 was due at the time of final settlement, scheduled for December 29, 2006.

On June 13, 2006, the parties executed an addendum to the Agreement, delaying the settlement to December 31, 2008 because of Avery's lack of, or inability to secure, funds to complete the real estate transaction on or by December 29, 2006.

In the summer of 2006, the parties orally transacted a land swap, whereby the Maisanos conveyed to Avery approximately 0.27 acres of their land upon which Avery constructed an access road to her proposed housing development. In exchange, Avery conveyed to the Maisanos approximately

0.45 acres of her land to the north of the Maisanos' property. On July 17, 2016, two deeds were consummated to accomplish the land swap. Although disputed by Avery, the Maisanos claimed that between June 2006 and December 2008, Avery, without seeking their permission, installed a storm water drainage system on "a significant portion" of the Property for the development of her nine residential lots. The Maisanos contend they did not restrict Avery from installing the system because Avery had committed in writing to purchase the Property and continued to assure them that when she obtained the necessary funds from the sale of her "spec home" located on one of her nine lots, she would purchase the Property. Nonetheless, the Maisanos claimed that they never granted Avery an easement for the storm water drainage system, and that it was Avery who obtained all necessary permits by falsely stating she obtained an easement from the Maisanos for the system.

On December 18, 2008, the parties executed yet another addendum to the Agreement to delay the settlement date to June 1, 2011, because Avery continued to lack the necessary funds and/or was again unable to secure the funding necessary to close on the Property on December 31, 2008. When it came time to settle on the Property on June 1, 2011, Avery again was financially unable to purchase the Property and failed to set a place and time for the closing. Nor did Avery offer to tender the purchase price in exchange for a deed of conveyance.

On September 10, 2012, the mortgage held by Susquehanna Bank on the lots owned by Avery was purchased by Hamlet Villas, LLC ("Hamlet"), a

Pennsylvania limited liability company formed by Avery for which she was the sole principal managing partner. On July 24, 2013, Avery transferred complete title and ownership of the lots to Hamlet.

By letter dated August 23, 2013, the Maisanos demanded that Avery set a time and place for settlement and pay the remaining purchase price in exchange for a deed of conveyance on the Property and/or execute another addendum extending the closing date. They further advised that if Avery did not perform as requested, the Maisanos would deem her in default of the Agreement and seek full legal redress. Avery refused, via a letter dated September 7, 2013. *Id.* at 33. In her letter, Avery stated in part:

> I executed those addendums because I always had a sincere desire to purchase your home with a genuine belief that I would have the financial ability to close the deal by each respective closing date. However, as you know, I have not and cannot agree to enter into any further extension agreement because of my financial inability to purchase your home now or in the next several years. Due to my recent foreclosure, judgments, and other credit related issues, there is no way for me to agree in good faith to purchase your home. It will take years for me to reestablish positive credit to have any borrowing ability.
>
>   . . . .
>
> I have no idea what the future after that holds. Even if I could reestablish credit, the value and condition of your house have substantially diminished over the years making any required bank appraisal unlikely to substantiate a loan for the purchase price that was initially established in 2004.

Avery's Letter, 9/7/13.

On February 12, 2016, the Maisanos filed a complaint against Avery and Hamlet for breach of contract and trespass, seeking, *inter alia*, specific

performance. The Maisanos contended there was no stipulated liquidated damages clause in the Agreement in the event Avery breached the contract, thus preserving Maisanos' right to sue for specific performance and/or actual monetary damages. The Maisanos further alleged Hamlet was the alter ego of Avery and that title to Avery's undeveloped lots was transferred to Hamlet to avoid any attempt by the Maisanos to enforce the Agreement or to seek damages.

On March 30, 2016, Avery filed an answer to the complaint, raising new matter and counterclaims.[2] The case eventually proceeded to a bench trial, following which the trial court found in favor of the Maisanos and against Avery. In its decision, the trial court concluded that Avery breached the Agreement. Trial Court Opinion, 11/9/16, at 10. On the issue of damages, however, the trial court awarded the Maisanos $150,000.00 plus interest as liquidated damages. *Id.* at 18. The trial court reasoned that the Maisanos failed to prove actual damages resulting from Avery's breach of the Agreement. The trial court also concluded that the Maisanos had granted Avery an irrevocable license to construct a storm water system on their land. *Id.* In this regard, the trial court found that the land development plans showed

> an underground storm water management area on [the] Maisano's [*sic*] property. Maisano[s] and Avery agreed that Mr. Maisano was asked at the Township meeting if he was in agreement with the submitted plans. Both testified that

_____

[2] Prior to trial, the trial court dismissed Avery's counterclaims.

> Mr. Maisano replied that "because of the Agreement of Sale, [Avery] was the equitable owner of his property" and, therefore, had authority to submit the plans. However, Mr. Maisano also testified that he "never saw" the plans prior to 2013, a statement which defies explanation.

*Id.* at 4. To the extent the value of the license had any impact on the Property, the trial court awarded the Maisanos $5,000.00 in nominal damages. *Id.* at 18.

On November 23, 2016, the trial court denied the Maisanos' motion for post-trial relief. On December 7, 2016, the trial court's verdict was reduced to judgment. On December 19, 2016, the Maisanos timely appealed to this Court.[3] The trial court ordered them to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. They complied, raising numerous assertions of error. In particular, they argued that the trial court erred in failing to grant them specific performance, as provided for under the Agreement. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding that the Maisanos were not entitled to specific performance because they failed to establish the inadequacy of a remedy at law.

---

[3] On January 20, 2017, we denied Avery's motion to quash the instant appeal and granted the Maisanos' application to amend the notice of appeal *nunc pro tunc*. The Maisanos had appealed from the trial court's November 9, 2016 decision and the November 23, 2016 order denying their motion for post-trial relief. We noted that an appeal lies only from a judgment entered subsequent to a trial court's disposition of post-trial motions and not from an order denying post-trial motions. Because the Maisanos did not appeal from the December 7, 2016 judgment, but rather from the order denying their motion for post-trial relief, we granted their application to amend the notice of appeal to reflect that the appeal was taken from the December 7, 2017 judgment. To the extent Avery seeks to quash this appeal again based on this issue, we deny her relief.

On appeal, the Maisanos present four issues for our review:

[I.] Where parties specifically contract for specific performance as a remedy, do old fashioned concepts of equity permit the trial court to ignore the plain language of the contract and re-write the contract to impose the remedy it selects?

[II.] Where it is clear there can be no adequate remedy granting damages, may a court nevertheless deny a parties [sic] chosen and contracted for remedy of specific performance because the party was unable to prove damages?

[III.] May an irrevocable license be imposed where the dominant party relied on a contract to purchase, and not a license; and where, because of equitable conversion, the proposed servient party held mere bare legal title at the time the proposed irrevocable license was created?

[IV.] Where a party is sued as the alter ego of another party, may the court refuse to hear testimony of the relationship of the parties simply because it is also clear a fraudulent transfer has occurred?

The Maisanos' Brief at 3 (unnecessary capitalization omitted).

We address the Maisanos' first two arguments together as they are intertwined. The Maisanos argue that specific performance was the exclusive remedy under the Agreement in the event of a breach by Avery. As a result, it is the Maisanos' contention that the trial court erred in finding otherwise.

It is settled that because contract interpretation is a question of law, our review of the trial court's decision is *de novo* and our scope of review plenary. ***Bair v. Manor Care of Elizabethtown, PA, LLC***, 108 A.3d 94, 96 (Pa. Super. 2015), *appeal denied*, 125 A.3d 775 (Pa. 2015).

The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument

must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

***Ramalingam v. Keller Williams Realty Group, Inc.***, 121 A.3d 1034, 1046

(Pa. Super. 2015) (citation and original emphasis omitted).

Instantly, the Agreement provides in relevant part:

**27. DEFAULT (1-02)**

(A) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:

1. Fail to make any additional payments as specified in paragraph 3; OR

2. Furnish false or incomplete information to Seller, Broker(s), or the mortgage lender, if any, concerning Buyer's legal and financial status, or fail to cooperate in the processing of the mortgage loan application, which acts would result in the failure to obtain the approval of a mortgage loan commitment; OR

3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

(B) Unless otherwise checked in paragraph 27(C), Seller may elect to retain those sums paid by Buyer, including deposit monies, in one of the following manners:

   1. On account of purchase price; OR

   2. As monies to be applied to Seller's damages; OR

   3. As liquidated damages for such breach.

(C) ☐ Seller is limited to retaining sums paid by Buyer, including deposit monies, as liquidated damages.

(D) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to paragraph 27(B) or (C), Buyer and Seller will be released from further liability or obligation and this Agreement will be VOID.

The Agreement, 12/21/04, at ¶ 27 (emphasis added).

Before addressing the amount of damages to which the Maisanos were entitled under the default provisions of this Agreement, we make several observations about the interpretation of this default provision. First, under subdivision 27(A), in the event of a buyer default, a seller is not obligated to, but may, keep all sums paid by the buyer, including deposit monies. Second, under subdivision 27(B), sums paid by the buyer may be retained, at the seller's election, on account of purchase price, as monies applied to damages claimed, or as liquidated damages for the breach. The seller is not limited by any election under subdivision 27(B) unless an election under subdivision 27(C) is exercised. Third, if a seller elects to limit himself or herself under subdivision 27(C) to retain sums as liquidated damages, the seller is entitled to no further damages, the parties are released from any further liability, and the Agreement is deemed null and void. Finally, nowhere in this provision is it provided that these default remedies are exclusive in the event of a breach. Nor is specific performance indicated as an exclusive remedy.

Instantly, it is undisputed that Avery was in default of the Agreement and that the Maisanos retained the $150,000 deposit paid by Avery upon execution of the Agreement. It is also clear the Maisanos did not intend to limit their legal remedies upon Avery's default. They expressly informed Avery in writing that they would deem her in default and seek "full legal remedies." In fact, the Maisanos did not check the box for subdivision 27(C) that would limit their remedy to liquidated damages.

The trial court and parties have devoted much time to discussing whether the Maisanos were entitled to specific performance of the Agreement. While the Agreement does not mention specific performance, as will be discussed *infra*, the failure to do so does not preclude the Maisanos from seeking this remedy, which in practical effect, is merely an attempt to recover the purchase price for the Property.[4]

Our Supreme Court has held that "where the action for specific performance is simply to recover the purchase price, and nothing in the circumstances of the case requires the aid of chancery to give effect to the contract, equity will not entertain it. ***Trachtenburg v. Sibarco Stations, Inc.***, 384 A.2d 1209, 1211-12 (Pa. 1978) (citing ***Appeal of Kaufman***, 55 Pa. 383, 385 (Pa. 1867)). Thus, we long have recognized in this Commonwealth that "an assumpsit action at law for the purchase price," as provided for in the Agreement here, is "the functional equivalent of specific performance."

---

[4] This remedy also will require the Maisanos to transfer the property to Avery.

***Trachtenburg***, 384 A.2d at 1212. In other words, in a real estate context, a seller's demand for specific performance "is, in effect," an action for the purchase price of the property. ***Id.***

> It is clear that, if the common law court (enables) the [seller] to maintain a debt action for the full price, as well as for damages . . ., his remedy at law should be regarded as complete and adequate. Judgment for the full price is identical with a decree for specific performance.

***Id.*** (citation omitted) (first alteration in original). The Court further explained:

> [W]e have gone so far as to hold that the same equitable principles applicable to a bill for specific performance apply to an action at law for the purchase price.
>
>  . . . .
>
> The $1,000 in escrow is nothing more than part of the purchase price, and since equitable principles would be fully applicable to appellees' action . . . it seems clear the trial court cannot enter judgment in favor of [the sellers] unless its order is conditioned upon [the sellers] transferring the deeds to the three parcels of real estate; [the sellers] should not be permitted to recover the purchase price and still retain ownership of the three contiguous parcels.

***Id.*** at 1212-13 (citations omitted).

Consistent with the principles outlined in ***Trachtenburg*** and the plain language of the Agreement, the Maisanos sought by way of "specific performance" the contract purchase price as damages conditioned upon their transfer of the Property. Specifically, under paragraph 27(B), the Maisanos were permitted to seek damages on account of purchase price. We therefore conclude that not only were the Maisanos within their contractual rights to seek specific performance, but also their demand for specific performance

- 11 -

was, in fact, a demand for the purchase price of the Property as stated in the Agreement.

The trial court did not err in recognizing the general principle that specific performance is available only when damages at law would be insufficient due to the special nature of the subject matter, or when damages are impractical when it is impossible to arrive at a measure of damages with any sufficient degree of certainty. Trial Court 1925(a) Opinion, 1/14/17, at 5-6 (citing **First Nat'l State Bank v. Commonwealth Fed. Sav. & Loan Ass'n**, 610 F.2d 164, 174 (3d. Cir. 1979)). Nor can we find error with the trial court's conclusion there was nothing unusually special about the Property that would make an award of damages insufficient. However, we do find error in the trial court's failure to award as damages the full purchase price for the Property (less deposit monies paid and retained). The trial court erred by faulting the Maisanos for not adequately proving the current market value of the Property. They did not need to do so, as the proper measure of damages for specific performance was the purchase price. To the extent the trial court declined to award the purchase price as damages because, under general principles of law, specific performance is not available where damages are ascertainable, the court committed legal error. As stated, in the case of a seller's claim for breach of a real estate sales agreement, a claim for specific performance is a demand for the purchase price, even though it is for an ascertainable amount of damages. Accordingly, we reverse the trial court's

judgment with respect to damages and remand this case to the trial court for a new damage trial.[5]

Due to our disposition of the Maisanos' first two issues, we decline to address the Maisanos' third, *i.e.*, that the trial court erred in finding a revocable license was created with respect to the installation of the storm water system installed over the Property. We have concluded that the Maisanos are entitled to the contract price damages and, in return, the Property must be conveyed to Avery. As such, it is of no moment how or why the storm water system was placed on the Property, as the Maisanos are to be awarded the purchase price for the Property as damages. Awarding the purchase price as damages is unaffected by the installation of the storm water system, since the system was installed after the purchase price was agreed upon. In light of this, we also conclude the trial court must vacate its $5,000.00 nominal damages award to the Maisanos for the irrevocable license relating to the storm water system.

---

[5] Approximately 12 years passed from the execution of the 2004 Agreement until trial commenced in October 2016. According to the record, during this time, the Property suffered some degree of deterioration. In particular, the house developed roof leaks requiring buckets in the living room to collect rainwater. When asked, Mr. Maisano believed it was Avery's responsibility to pay for any and all repairs. We note the Maintenance and Risk of Loss provision at paragraph 23 of the Agreement provides that the seller must maintain the Property in its condition as of execution of the Agreement, normal wear and tear excepted. If wear and tear is proven beyond that which can be considered normal, purchase price damages should be reduced by an amount that represents these damages.

We next address the Maisanos' final issue that the trial court abused its discretion in disallowing any evidence of the property transfer between Avery and Hamlet.

Admission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law. *Schuenemann v. Dreemz, LLC*, 34 A.3d 94, 100–01 (Pa. Super. 2011). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused. *Id.*

Instantly, we find no abuse of discretion in the trial court's decision to disallow any evidence relating to the transfer of properties from Avery to Hamlet. As the trial court aptly found, "this case was a breach of contract action" between the Maisanos and Avery. Trial Court Opinion, 1/19/17, at 11. Hamlet "was not a party to the contract. Thus, whether Avery transferred funds to [Hamlet] is of no consequence." *Id.* The Maisanos' claim that Avery transferred her undeveloped lots to Hamlet to avoid damages for her breach and enforcement of the Agreement is irrelevant to the question of whether Avery breached the Agreement. Accordingly, we find no abuse of discretion

in the trial court's conclusion that "any evidence of transfers between Avery and [Hamlet] was irrelevant."[6] *Id.* at 12.

In sum, we affirm the trial court's judgment to the extent the court found Avery breached the Agreement, as well as with regard to exclusion of evidence by the Maisanos relating to Hamlet. We reverse the trial court's judgment insofar as it failed to entertain properly the Maisanos' claim for purchase price damages, which is a claim for specific performance. We remand this case to the trial court for further proceedings consistent with this decision.

Judgment affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/19

---

[6] We recognize that the Maisanos have a concern that after judgment is entered in their favor, Avery, due to her transfers to Hamlet, may be judgment proof. It is possible relief may be available under The Pennsylvania Uniform Fraudulent Transfers Act ("PUFTA"), 12 Pa.C.S.A. § 5101 *et seq*., based upon the Maisanos' suggestion Avery intended to defraud them by transferring assets to Hamlet. We offer no opinion on the merits of any such claim, but merely mention this possibility to suggest that while the claim may be irrelevant to the current action, it may have some bearing on other causes of action at a later time.