J-S13033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.M.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1354 WDA 2023 |

Appeal from the Order Entered October 11, 2023
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  CP-65-OC-0000029-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: T.A.T.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.M.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1355 WDA 2023 |

Appeal from the Order Entered October 11, 2023
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  CP-65-OC-0000030-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: A.F.-M.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.M.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1356 WDA 2023 |

Appeal from the Order Entered October 11, 2023
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  CP-65-OC-0000031-2022

BEFORE:    KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: June 24, 2024**

T.M.S. (Mother) appeals from the orders issued by the Westmoreland County Orphans' Court, which granted the petitions filed by the Westmoreland County Children's Bureau (the Agency) and involuntarily terminated Mother's rights to her children: 17-year-old daughter, J.M.S.; 8-year-old son, T.A.T.S.; and 6-year-old daughter A.F.-M.G. (collectively, the Children), pursuant to 23 Pa.C.S.A. § 2511(a)(2), (a)(5), (a)(8), (b).  After review, we affirm.[1]

The relevant history is as follows.  The Agency became involved with the family in 2021.  In March 2021, Mother went to jail for a few days, and the Children were cared for by a family friend.  Upon her release, Mother did not contact the friend to regain custody.  The family friend could not care for the Children for an extended period, so she contacted the Agency.  The Agency instituted family service plans to assist the family to no avail.  The Children were ultimately adjudicated dependent on August 25, 2021.

The juvenile court ordered Mother: to obtain and maintain stable housing; obtain and maintain a legal source of income; obtain a mental health evaluation and follow all treatment recommendations until successfully

---

[*] Former Justice specially assigned to the Superior Court.

[1] The orphans' court also terminated the rights of the Children's respective fathers.  The father of J.M.S. is J.S.  The father of T.A.T.S. is G.D. The father of A.F.-M.G. is R.G.; his appeal is separately listed before this Panel.  ***See*** 1357 WDA 2023.  The other fathers did not appeal the court's decision.

discharged; comply with random drug screens; follow all probation requirements; and comply with all parenting recommendations.

In October 2021, the juvenile court held a permanency review hearing. The court determined that Mother was minimally compliant with her court-ordered objectives. She underwent a drug and alcohol evaluation was recommended to undergo treatment three days per week, but she did not attend her meetings. Mother submitted to only two drug screens, out of 24, both of which were positive; she was also awaiting a probation revocation hearing.

The next permanency review hearing occurred in April 2022. Mother provided 10 of 26 drug screens, eight of which were positive (for methamphetamines and/or amphetamines). Mother had yet to undergo a mental health treatment, and she did not receive any additional drug treatment. Mother had an active bench warrant for failing to appear at a probation revocation hearing. However, the court noted that Mother was appropriate during her supervised visits with the Children. She demonstrated some of her parenting skills at the visits, while appearing motivated to learn more. She also provided games and made appropriate meals for the Children.

Mother did not attend the third permanency review in September 2022. The juvenile court determined that Mother had made minimal progress. She did not have housing or income. She had not completed a mental health evaluation. She did not follow through with drug and alcohol treatment. She was positive for all four of the drug screens she submitted (out of the eight

that were offered). Evidently, Mother attended only five of 17 visits with the Children on account of her active bench warrant; naturally, this meant that Mother was not compliant with the terms of her probation.

The juvenile court held the fourth permanency review hearing in March 2023. Mother was not in attendance. She had only attended seven of the 22 visits. She continued to test positive for illicit substances, and she did not provide the court with evidence of her compliance with the mental health and drug treatment goals.

Meanwhile, the Agency had petitioned to terminate Mother's rights in May 2022. After several continuances, the orphans' court conducted termination proceedings over the course of four dates: April 27; May 15; September 8; and September 21, 2023. By this point, Mother had secured housing in Blair County. Nonetheless, the orphans' court terminated Mother's rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (a)(5), (a)(8) and (b). [2]

_____

[2] The Children were represented by counsel pursuant to 23 Pa.C.S.A. § 2313(a) in addition to their appointed guardian *ad litem.*

Counsel noted that A.F.-M.G., age 6, refused to communicate with him, and thus Counsel could not offer a position.

Counsel doubted whether T.A.T.S., age 8, understood the nature of the termination proceedings, but the Child indicated to Counsel that he wished to remain with the foster parents forever and did not want to reunify with Mother.

Counsel also questioned whether J.M.S., age 17, fully understood the nature of the proceedings given her autism diagnosis. Still, J.M.S. indicated to counsel that she did not wish to reunify with Mother and that she was excited to talk
*(Footnote Continued Next Page)*

Mother timely filed this appeal. She presents the following three issues for our review, which we reorder for ease of disposition:

1. Did the trial court err by finding that the Westmoreland County Children's Bureau presented clear and convincing evidence to support termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (a)(5), and (a)(8) in the termination trial?

2. Did the trial court err in failing to evaluate whether the Westmoreland County Children's Bureau made reasonable efforts to prevent the removal of the Child from Mother's home before filing for termination of parental rights?

3. Did the trial court err in admitting criminal records of Mother to support Westmoreland County Children's Bureau's request to terminate Mother's parental rights?

Mother's Brief at 4 (style adjusted).[3]

We begin with our well-settled standard of review:

_____

about "adoption options." Mother does not challenge the adequacy of the Children's representation.

[3] In her Brief, Mother's statement of questions involved listed five issues. The second issue was a duplicate of Mother's first issue, relating to Section 2511(a). Mother decided to forgo a separate issue relating to gas cards, thereby reducing the number of claims to three. *See* Mother's Brief at 16.

We note, however, that Mother abandoned her challenge to the court's decision under Section 2511(b), even though she had initially included the claim in her concise statement of matters complained of appeal. Given the inclusion of the subsection (b) claim in her concise statement, coupled by the typo in the statement of questions involved section of her Brief, we would be inclined to overlook the mistake and address a subsection (b) claim had she fully briefed the issue. She did not; Mother only alludes to Section 2511(b) in passing. As such, this prong of the bifurcated termination analysis is not before us.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving…the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports the trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted); *see also T.S.M.*, 71 A.3d at 267.

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted); *see also Int. of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022).

Instantly, the orphans' court terminated Mother's rights under 23 Pa.C.S.A. § 2511(a)(2), (a)(5), (a)(8) and (b). In her first issue, Mother challenges the court's respective determinations under Section 2511(a). As we may affirm under any ground under Section 2511(a), we review the court's decision as to Section 2511(a)(2). That subsection provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> [...]

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

In order to satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021). Moreover, grounds for termination under Section 2511(a)(2) "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (citing *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010). On this point, we emphasize that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *Id*.

Mother challenges the third step of the Section 2511(a)(2) analysis. She largely concedes that her addiction caused the Children to be without parental care; however, she maintains that her parental capacity could be remedied – and in fact was remedied. For support, Mother cites her most recent participation in drug treatment and her efforts to improve her parenting skills. *See generally* Mother's Brief at 12-14. In Mother's view, the best evidence supporting her position was the fact that she found housing. Mother's position

on this point dovetails with her second appellate issue, which we address contemporaneously.

In addition to her Section 2511(a)(2) challenge – indeed, in support of her Section 2511(a)(2) challenge – Mother argues the Agency did not use reasonable efforts to aid her reunification with her Children. *See id.* at 17-18. Mother notes that she found subsidized housing in Altoona, with the Blair County Housing Authority. According to Mother, she "recognized the need to start fresh and remove herself from the addictive environment in Greensburg where she had lived." *Id.* at 12. The distance between Altoona and Greensburg is approximately a 90-minute drive, though Mother said that she took the train when she visited the Children. *Id.* at 17. Mother's argument is that her housing in Altoona satisfied a key reunification objective, and this achievement was sufficient to defeat termination under Section 2511(a)(2); but, if it was not sufficient, then the fault lies with the Agency which obstructed her reunification efforts – specifically, her efforts to find housing sooner and in Greensburg, Westmoreland County. Mother argues:

> The Agency obstructed Mother in her efforts to reunify with the Children in multiple ways showing the Agency's failure to provide reasonable services to Mother[.] The caseworker was derisive in her evaluation of Mother's efforts to resolve her homelessness when Mother proved she had a lease for an apartment in Altoona. Mother also complained that the caseworker never talked to Children about Mother's positive behaviors such as why she relocated to Altoona. When the caseworker talked with the Children, she suggested that the Children wouldn't want to leave their friends in the Greensburg area. [At the hearing,] the caseworker couldn't recall whether she told Mother to wait to give the Agency a

> copy of the lease for housing to prove Mother had stable housing. Mother was offered no services by the Agency which would promote her success in Altoona. Instead, Mother had to help herself, for example, by paying out-of-pocket for the train and other transportation from Altoona to visit with the Children in Greensburg.

Mother's Brief at 17 (style adjusted) (citations to the record omitted).[4]

Both our Court and the Supreme Court have explained the obligation of child protective service agencies to use reasonable efforts to support parental reunification. **See In Interest of C.K.**, 165 A.3d 935, 941 (Pa. Super. 2017) (citing **In re D.C.D.**, 105 A.3d 662, 675-76 (Pa. 2014)); **see also** 42 Pa.C.S.A. § 6351(f)(5.1). The High Court explained, while Section 2511 does not require a court to consider the reasonable efforts provided to a parent prior to the termination of parental rights, the absence of reasonable efforts may be relevant to the court's analysis. **D.C.D.**, 105 A.3d at 672. "For example, as applicable to subsection (a)(2), a court may find an agency's lack of assistance to a parent relevant to whether a parent's incapacity 'cannot or will not be remedied by the parent.'" **Id.** (quoting 23 Pa.C.S.A. § 2511(a)(2)).

With these principles in mind, we conclude that Mother's arguments merit no relief. We are not persuaded by Mother's argument that, following her move to Altoona, she could have achieved the rest of her objectives had the Agency supported her. Mother did not move to Altoona until April 2023, approximately 20 months after the Children were adjudicated dependent.

---

[4] Mother notes that, earlier in the case, the Agency never provided bus passes to assist with transportation, and that the Agency only provided Mother gas cards shortly before the termination proceedings.

Even if we agreed with Mother's contention that the Agency did not provide reasonable services throughout the entirety of the dependency proceedings, we would not necessarily vacate the termination orders. Here, however, it is apparent from the record that the Agency did, in fact, make reasonable efforts. Specifically, the Agency offered drug and alcohol services, mental health services, parenting services, housing services and transportation services. The court documented the Agency's efforts in its corresponding permanency review orders.

As for the substantive Section 2511(a)(2) analysis, we discern no abuse of discretion nor error of law. The orphans' court addressed Mother's lack of progress in a separate opinion for each Child:[5]

> Since the case was opened for services in January of 2021, Mother has not taken sufficient corrective action to alleviate the concerns of the Agency. The child has been in agency custody for two years and Mother continues to struggle with substance abuse and tests positive on drug screens. Mother attended rehab at Cove Forge and was successfully discharged, only to test positive for cocaine 9 days after release. Mother continues to argue that the drug screens are inaccurate. Additionally, Mother has not complied with the services offered for her mental health. Mother sees a psychologist once every three months who provides Mother's medication for mental health related concerns. Even though a mental health evaluation was recommended of Mother after each Permanency Review Hearing, Mother never completed the evaluation or never provided proof of

---

[5] The orphans' court issued an opinion to accompany the termination order, on each Child's respective docket. The three opinions are substantially similar to one another. The excerpt quoted below is found in each opinion. For the sake of completeness, we quote from orphans' court opinion regarding J.M.S.

completion to the agency. Additionally, from March 2021 until April 2023, Mother was offered one hundred visits with the child and only attended fifty-three visits, about half of the offered visits. Mother was offered hands on parenting which is no longer being offered due to a lack of follow through and progress by Mother. Additionally, a service provider voiced concerns that Mother had been showing up impaired for visits and as a result Mother's visitation decreased in frequency. Concerns continue for Mother and the circumstances that led to the child's removal have not been remedied nor does it appear that the circumstances will be remedied in the foreseeable future.

*See* Orphans' Court Opinion, dated 10/11/23, 1354 WDA 2023, at 9.

As the record makes clear, Mother's struggles with addiction continued throughout this case. Her addiction was the barrier to reunification, and it was an incapacity that she could not remedy. The court was within its discretion to conclude that termination was warranted under Section 2511(a)(2). Mother's first and second appellate issues are without merit.

In her final appellate issue, Mother argues the orphans' court erred when it admitted evidence of Mother's prior bad acts, which is prohibited under Pennsylvania Rule of Evidence 404(b). *See* Mother's Brief at 15-16. According to Mother, the evidence in question was Mother's summary traffic offenses.[6] According to Mother, the "Agency used the summary offenses to smear Mother's character in front of the court under the guise of suggesting it was relevant to show Mother's propensity to be unable to properly parent

---

[6] Notably, the Agency seemingly suggests that the evidence in question was the admission of Mother's criminal docket, which included other offenses relating to her drug use. *See* Agency's Brief at 17-18. For our purposes, the discrepancy is immaterial.

the Children at the time of the trial." **See** Mother's Brief at 16. Mother concludes that admission of this evidence presented Mother in a bad light and was a clear violation of Pa.R.E. 404(b)(1). **Id.**

The admission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law. **See, e.g., Maisano v. Avery**, 204 A.3d 515 (Pa. Super. 2019).

Upon review, we discern no abuse of discretion, nor error of law. Quite clearly, Mother's prior offenses were not admitted to prove her bad character or that she acted within that character, as prohibited by Pa.R.E. 404(b)(1). Instead, the Agency sought to demonstrate that Mother's active bench warrants impeded reunification with the Children – *i.e.*, a permitted use under Rule 404(b)(2). Mother did not attend court appearances or visits with the Children for fear of being arrested. Supposing that the court ordered reunification, the existence of Mother's bench warrants was also relevant to the question of whether any reunification could be sustainable. After all, the Children came to the attention of the Agency because Mother was temporarily incarcerated, and the Children suddenly had to stay with a family friend.

In sum, we conclude the orphans' court did not err or otherwise abuse its discretion when it terminated Mother's parental rights to her three Children under 23 Pa.C.S.A. § 2511(a)(2). Moreover, there is no merit to Mother's argument that the Agency failed to use reasonable efforts. Finally, the court

did not err or abuse its discretion when it admitted evidence of Mother's prior offenses, pursuant to Pa.R.E. 404.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/24/2024