J-A23010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GLENN O. HAWBAKER, INC. | : | |
| | : | |
| Appellant | : | No. 188 MDA 2024 |

Appeal from the Order Entered January 31, 2024
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0000461-2021

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    **FILED: MARCH 5, 2025**

Glenn O. Hawbaker, Inc. ("GOH") appeals from the order denying its motion to enforce plea agreement.  We affirm.

The trial court ably summarized the background of this case as follows:

> GOH is a family-owned business headquartered in State College, Pennsylvania.  Founded in 1952 by the Hawbaker family, GOH is primarily a highway and bridge construction contractor.  It has performed numerous construction projects for both private and public customers.  Throughout Pennsylvania, GOH has completed construction projects for the Pennsylvania Department of Transportation ("PennDOT"), counties[,] and municipalities. GOH operates several facilities in Pennsylvania and neighboring states.
>
> At any given time, GOH employs up to approximately 1,200 employees, including roughly 100 employees who work at the company's corporate headquarters in State College and hundreds of employees who work at construction sites throughout Pennsylvania on public and private projects.  A large percentage of the company's construction projects are government-funded public works projects requiring compliance with state and/or federal prevailing wage laws.

On April 8, 2021, the Office of Attorney General ("OAG") filed a criminal complaint against GOH, charging it with four counts of theft by failure to make required disposition of funds received (first degree felony) under 18 Pa.C.S. § 3927(a). The charges stemmed from alleged misappropriation of funds that GOH employees earned while working on public works projects. All of the conduct for which GOH was charged occurred between September 1, 2015, and December 31, 2018 (the "charged period").

Construction contractors who work on public works projects are required to comply with the terms of the Pennsylvania Prevailing Wage Act ("PWA"), [and the federal] Davis-Bacon Act ("DBA") and [federal] Davis-Bacon Related Acts ("DBRA"), depending on whether federal and/or state funds are being used for the projects.

Under the PWA, DBA[,] and DBRA, workers on public works projects are to be paid in accordance with wage determinations issued by either the Department of Labor and Industry ("DLI") or the United States Department of Labor ("USDOL"). The wage determinations specify what hourly wage is deemed prevailing for a given trade in the area. The wage consists of two components - an hourly wage to be paid to each worker and a fringe benefit allotment which permits employers to satisfy a portion of their total wage obligations by providing the workers with bona fide employment benefits.

There are limitations on the costs that a contractor may assess to prevailing wage fringe benefits. For instance, contractors may not use prevailing wage fringe benefit funds to cover internal administrative fees. Further, the amount of fringe benefit money contributed into a bona fide fringe benefit program must be reasonably anticipated to cover the actual cost of the benefit. Prevailing wage fringe benefit money cannot be used to fund benefits for anyone other than the individual worker who earned the money. Contractors bidding on public works projects are notified in the request for proposal that the project is subject to prevailing wage law requirements. When a contractor is selected to complete a public works project subject to the PWA, DBA, or DBRA, the contractor agrees that it will pay its workers in accordance with the prevailing wage laws.

The criminal complaint against GOH alleged that during the charged period, GOH stole fringe benefit funds from employees who worked on prevailing wage projects. Specifically, the criminal complaint alleged that GOH used the money intended to fund prevailing wage workers' retirement accounts and health and welfare benefits to instead fund retirement accounts and health and welfare benefits for all employees, executives, and owners. GOH allegedly artificially inflated its records of benefit spending for prevailing wage workers while reporting to government agencies that it was providing benefits well in excess of what was required by law.

A grand jury investigation preceded the filing of the criminal charges against GOH. After learning of the grand jury investigation in June 2018, GOH retained consultants to review its prevailing wage practice and changed its prevailing wage fringe credit practices effective in 2019. GOH believed the changes it made to the fringe credit methodology complied with the OAG's interpretation of the PWA and the DBA. The [affidavit of probable cause attached to the] criminal complaint indicates that OAG believed that despite the changes, GOH continued to underfund prevailing wage fringe benefits; however, since GOH made efforts to correct its practices starting in 2019, no criminal conduct was alleged for that year.

Trial Court Opinion, 4/8/24, at 1-4 (cleaned up).

Due to the criminal charges, the Pennsylvania Department of Transportation ("PennDOT") issued a notice "suspending [GOH] from contracting with, bidding on, or participating in the award of contracts for Commonwealth-supervised or Commonwealth-funded highway construction work." *Glenn O. Hawbaker, Inc. v. Dep't of Transp.*, 304 A.3d 1067, 1072 (Pa. 2023). In particular, PennDOT acted pursuant to regulations that allowed it to temporarily or permanently suspend or debar contractors for enumerated reasons including commission of a criminal offense and violations of state or federal prevailing wage standards. *Id*. In response, GOH filed in

the Commonwealth Court a complaint in equity against PennDOT asserting due process violations and contending that DLI had "exclusive jurisdiction over investigations and debarment actions involving PWA violations pursuant to a different and more fulsome process."[1]  *Id*. at 1073.  GOH also filed a motion for a preliminary injunction, which our sister Court granted on June

---

[1] As our High Court explained:

> [T]he PWA itself is administered and enforced by [DLI].  The PWA . . . requires public bodies to notify the Secretary of [DLI] when a contractor fails to pay prevailing wages in connection with public work performed for the public body.  Whenever the Secretary of [DLI] receives such a notification, or whenever any workman employed upon public work files a timely protest objecting that he has been paid less than prevailing wages as required by the PWA . . ., the Secretary of [DLI] is to conduct an investigation that entails an appropriate hearing upon due notice to interested parties.  Additionally, the Secretary of [DLI] is to determine whether or not there has been a failure to pay the prevailing wages and whether such failure was intentional or otherwise.
>
> If the Secretary of [DLI] determines after notice and a hearing that a contractor has **unintentionally** failed to pay prevailing wages, the Secretary of [DLI] shall afford the contractor a reasonable opportunity to adjust the matter by, *inter alia*, making the required payments.  If the Secretary of [DLI] determines after notice and a hearing that a contractor has **intentionally** failed to pay prevailing wages, the Secretary of [DLI] is to notify all public bodies of the name of the contractor and no contract shall be awarded to such contractor until three years have elapsed from the date of the notice to the public bodies.  Also, in the event of a contractor's **intentional** violation, the PWA imposes civil penalties upon the contractor and provides that the Secretary of [DLI] may request the Attorney General to proceed to recover the penalties for the Commonwealth of Pennsylvania.

*Hawbaker*, 304 A.3d at 1071–72 (cleaned up, emphases in original).

30, 2021, enjoining PennDOT from proceeding with suspension or debarment.

*Id*. at 1074.

Turning back to the instant criminal proceedings:

On August 2, 2021, the parties entered into the subject plea agreement, which [wa]s executed by the deputy attorney general, Daniel Hawbaker in his capacity as President of GOH, and counsel for GOH. The plea agreement provides that GOH would plead *nolo contendere* to all four counts of theft by failure to make required disposition of funds received (first degree felony) based on conduct in the years 2015-2018, pay restitution of $20,696,453.00 to affected victims, and reimburse OAG for investigative costs incurred. The parties agreed that GOH would be sentenced to a five-year term of probation on each count, to run concurrently. The OAG agreed not to bring any additional criminal charges against GOH or any of its shareholders, officers, and employees for the conduct at issue occurring from January 1, 2015, through August 2, 2021.

The plea agreement provides that as a condition of probation, GOH "will submit to oversight by a Corporate Monitor that will oversee the company's compliance with all state and federal prevailing wage laws and regulations, including the [PWA, DBA, and DBRA] during the five[-]year term of probation." The parties agreed for the court to appoint Alfred B. Robinson, Jr., Esquire, to serve as Corporate Monitor.

[The specifics of the conditions of probation are discussed in detail *infra*.]

On August 3, 2021, the court sentenced GOH in accordance with the plea agreement. . . .

At sentencing, with respect to the involvement of the Corporate Monitor, [the] OAG asked the court to appoint him "to ensure [GOH's] compliance with state and federal prevailing wage laws" for the period of January 1, 2019, until the end of the term of probation. D. Michael Hawbaker, executive vice president of GOH, represented GOH at sentencing and stated that "even though [GOH] is not pleading guilty to the criminal charges, the company does agree to pay the $21 million in restitution to our current and former employees under the terms of the agreement

- 5 -

provided to you today, Your Honor. The company will also be under the court supervised monitor, independent monitor appointed and if so agreed by the court, making sure that any and all federal and state laws will remain in full compliance."

Trial Court Opinion, 4/8/24, at 4-6 (cleaned up).

The following month, GOH returned to the Commonwealth Court, seeking to amend its petition for injunctive relief against PennDOT in light of the plea agreement. Therein GOH reasserted its due process claims and position that DLI had exclusive jurisdiction to debar based on prevailing wage violations, and further posited that GOH's *nolo contendere* plea did not establish that it violated any law. On January 19, 2022, the Commonwealth Court again issued a preliminary injunction preventing PennDOT from pursuing debarment based upon the OAG's criminal charges against GOH or GOH's *nolo contendere* plea.[2] PennDOT appealed the ruling to our Supreme Court.

While that appeal was pending, DLI initiated separate proceedings against GOH and two of its principals requiring them to show cause why they should not be found in violation of the PWA for intentionally withholding fringe benefit payments in 2019, 2020, 2021, and 2022. The order indicated that

---

[2] There is no indication in the decision of the Commonwealth Court that GOH advanced the argument that the terms of its plea agreement with the OAG prohibited debarment proceedings by an administrative agency founded upon pre-plea prevailing wage violations. **See Glenn O. Hawbaker, Inc. v. Dep't of Transp.**, 138 M.D. 2021, 2022 WL 1592589 (Pa.Cmwlth. 2022) (unreported memorandum), *rev'd and remanded*, 304 A.3d 1067 (Pa. 2023).

DLI had received a complaint from a worker in 2021, a few weeks after GOH was sentenced in accordance with the plea agreement, and a subsequent investigation revealed that GOH and its principals were improperly "counting training costs incurred by [them] for their own benefit as purported fringe benefits provided to employees," an intentional violation of the PWA. **See** Trial Court Opinion, 4/8/24, at 6. Based upon this conduct, DLI sought "debarment from public contracts for three years and individual liability for penalties and statutory liquidated damages for violating the PWA." **Id**.

On October 19, 2023, GOH filed the motion to enforce plea agreement that is the subject of the instant appeal, asking the criminal trial court to enjoin DLI's proceedings.[3] Before the OAG responded to GOH's motion, our Supreme Court handed down a decision in favor of PennDOT in **Hawbaker**. Therein, the Court unanimously held that the Commonwealth Court erred in exercising equitable jurisdiction to grant GOH injunctive relief because GOH had failed to exhaust its administrative remedies, given that PennDOT's rule-to-show-cause proceedings allowed GOH to develop its various arguments and preserve them for appellate review. **See Hawbaker**, 304 A.3d at 1090.

---

[3] GOH also sought a temporary stay with the DLI hearing officer, requesting a halt to the proceedings pending the criminal court's decision. The hearing officer denied the motion.

- 7 -

On January 8, 2024, the OAG responded to GOH's motion.[4] The trial court entertained oral argument after which it denied GOH's motion to enforce plea agreement by order of January 31, 2024. This timely appeal followed, and both GOH and the trial court complied with Pa.R.A.P. 1925. GOH presents the following questions for our determination:

1. Did the trial court err in denying GOH's motion to enforce its plea agreement?

2. Did the trial court err in determining that the plea agreement and its sentencing orders do not provide that the Corporate Monitor shall be the sole and exclusive arbiter of GOH's prevailing wage practices and compliance during the monitoring period, which commenced on January 1, 2019, and continues through August 3, 2026?

3. Did the trial court err in holding that [DLI] was not bound by the plea agreement and sentencing orders which appointed the Corporate Monitor as the sole decisionmaker regarding GOH's prevailing wage practice and compliance between January 1, 2019, and August 3, 2026?

GOH's brief at 4-5 (cleaned up).

We begin with a review of the applicable law. Plea agreements are contracts and are governed by contract principles. *See Commonwealth v. Hainesworth*, 82 A.3d 444, 447 (Pa.Super. 2013). *See also Commonwealth v. Coleman*, 320 A.3d 1217, 1222 (Pa.Super. 2024) ("Although a plea agreement occurs in a criminal context, it remains

_____

[4] The OAG did not contend that GOH should have exhausted its administrative remedies in the DLI proceeding rather than seeking an injunction from the court in this criminal action.

contractual in nature and is to be analyzed under contract-law standards."
(cleaned up)). Interpretation of a contract is a legal question subject to *de novo*, plenary review. *See Commonwealth v. Kerns*, 220 A.3d 607, 612
(Pa.Super. 2019).

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

*Maisano v. Avery*, 204 A.3d 515, 520 (Pa.Super. 2019) (cleaned up).

In determining intent, "the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement." *Provenzano v. Ohio Valley Gen. Hosp.*, 121 A.3d 1085, 1095
(Pa.Super. 2015) (cleaned up). "The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement." *Id*. (cleaned up). *See also Coleman*, 320 A.3d at 1222 (indicating that "disputes over any particular term of a plea agreement must be resolved by objective standards" and "must be based upon the totality of the surrounding circumstances" (cleaned up)).

In sum, a defendant is entitled to have what was promised to him for entering his plea. *See Commonwealth v. Kroh*, 654 A.2d 1168, 1172

(Pa.Super. 1995) ("There is an affirmative duty on the part of the prosecutor to honor any and all promises made in exchange for a defendant's plea." (cleaned up)). If the court determines that an alleged term was reasonably understood by the parties to be part of the agreement, "then the convicted criminal is entitled to specific performance of the term." **Commonwealth v. Snook**, 230 A.3d 438, 444-45 (Pa.Super. 2020) (cleaned up).

With these principles in mind, we turn to GOH's arguments. Overall, GOH's position is that it agreed to plead *nolo contendere* to the Commonwealth's theft charges upon the belief that it would be able to continue to do prevailing wage jobs during the monitoring period, so long as it abided by the Corporate Monitor's direction as to compliance with the prevailing wage laws. **See** GOH's brief at 38. In that vein, the foundation for its various arguments for enjoining the pending DLI proceedings is the premise "that the plea agreement unambiguously makes clear that the Corporate Monitor shall be the exclusive decisionmaker regarding the company's prevailing wage compliance during the monitoring period."[5] **Id**. at 39 (cleaned up).

Accordingly, we examine the terms of the written agreement to determine if it indicates a promise by the OAG that the Corporate Monitor

---

[5] As this language indicates, GOH maintains that the writing reflects the whole agreement of the parties and disclaims any fraud, accident, or mistake warranting the use of parol evidence to illuminate the parties' intent. **See** GOH's reply brief at 22.

would have what GOH variously styles as "exclusive jurisdiction" or "exclusive authority" to be the "sole arbiter" or "sole decisionmaker" as to whether GOH's practices comply with the mandates of state and federal prevailing wage laws such that DLI's proceedings against it for alleged violations in 2019 through 2022 are foreclosed.

At the outset, the agreement defines "covered conduct" as "the alleged theft of prevailing wage fringe benefit funds due" pursuant to the PWA, DBA, and DBRA, and stipulates that GOH would plead *nolo contendere* to four counts of theft based upon such conduct in the years 2015 through 2018. **See** Plea Agreement, 8/2/21, at 1.[6] As a result, GOH would be sentenced to serve four concurrent five-year terms of probation and the payment of costs of prosecution and restitution. **Id**. at 1, 3. In exchange, the OAG agreed that it would "not bring any additional criminal charges related to the [c]overed [c]onduct against GOH or any of its shareholders, officers, and employees for conduct occurring during the period [of] January 1, 2015, through" August 2, 2021, the date of the agreement. **Id**. at 3.

Regarding the probation, GOH would, at its expense, "submit to oversight by a Corporate Monitor that will oversee the company's compliance with all state and federal prevailing wage laws and regulations," including the PWA, DBA, and DBRA. **Id**. at 1; Conditions of Probation, 8/3/21, at ¶ 2. The

---

[6] The plea agreement is included in the certified record as Exhibit A to GOH's October 19, 2023 motion to enforce plea agreement.

agreement went on to detail the Corporate Monitor's scope of work. *Id*. at 2.

Those provisions, which were included by the trial court as conditions of

probation attached to the sentencing orders, provide, in pertinent part:

> 3.      The Corporate Monitor will monitor [GOH]'s prevailing wage practices and ensure [GOH] complies with all state and federal prevailing wage laws and regulations, including the [PWA, DBA, and DBRA], **from January 1, 2019, until the completion of the sentence** (the "Monitoring Period").  At the sole discretion of the Corporate Monitor, the Corporate Monitor may utilize professional services, including but not limited to accounting, actuarial and/or legal services, as may be necessary.
>
> 4.      If the Corporate Monitor determines that there were any deficiencies in [GOH]'s prevailing wage practices during the Monitoring Period, [GOH] will remedy such deficiencies, including the payment of any funds or benefits determined to be due and owing.  **The Corporate Monitor's determinations with respect to the** [**PWA, DBA, and DBRA**] **shall be final. However, he may, at his sole discretion, seek guidance from appropriate administrative agencies.**  The parties shall resolve all other disputes in good faith.
>
> . . . .
>
> In the event **[GOH] ceases to engage in prevailing wage projects subject to the** [**PWA, DBA, and/or DBRA**] **for any reason**, notice shall be provided to the Corporate Monitor, the Court, the Centre County Adult Probation Department, and the OAG.  Other than oversight of the payment of restitution . . ., **corporate monitoring will not be required during any period [GOH] is not engaged in prevailing wage projects**.  If [GOH] re-engages in prevailing wage projects during the term of probation, it shall notify the Corporate Monitor, the Court, the Centre County Adult Probation Department, and the OAG, and corporate monitoring will resume for the remaining period of probation.

Plea Agreement, 8/2/21, at 2; Conditions of Probation, 8/3/21, at ¶ 6

(emphases added).

Concerning the circumstances surrounding the agreement, GOH asserts that it "firmly believed" that the following aspects of the plea agreement "specifically precluded debarment action by the Commonwealth or any other entity," namely:

> (1) the appointment and role of the Corporate Monitor; (2) that the OAG conceded that there was no criminal conduct, and thus no intentional violation of the PWA, from January 2019 forward; (3) that the plea agreement contemplated that GOH would continue to perform prevailing wage work; and (4) the fact that the plea itself was a *nolo contendere* plea, as opposed to a guilty plea.

GOH's reply brief at 21 (cleaned up). GOH further cites the fact that, at the time it entered the plea, the Commonwealth Court had just enjoined PennDOT's debarment proceedings in support of its "high level of comfort that no debarment was forthcoming at the time of the plea agreement." ***Id***. at 21-22 (cleaned up). Examining the language of the parties' agreement in this setting, GOH maintains that it unambiguously provides "that the Corporate Monitor shall be the sole arbiter of **civil issues** regarding GOH's prevailing wage compliance" during the look-back portion of the monitoring period. ***See*** GOH's brief at 35 (emphasis in original).

The crux of GOH's argument is the indication that the decision of the Corporate Monitor as to GOH's compliance is "final." The trial court, in denying GOH's request for equitable relief, opined that the Corporate Monitor is the functional equivalent of a probation officer assisting in GOH's rehabilitation, and the sentence providing that his findings are final "simply means that GOH

cannot contest the determinations made by the Corporate Monitor." Trial Court Opinion, 4/8/24, at 12. In view of the surrounding circumstances and the entirety of the written agreement, we agree that is the only reasonable interpretation.

We reiterate that the passage in question states as follows: "The Corporate Monitor's determinations with respect to the [PWA, DBA, and DBRA] shall be final. However, he may, at his sole discretion, seek guidance from appropriate administrative agencies." Plea Agreement, 8/2/21, at 2.

This expression intimates no divergence between the finality of the Monitor's determinations as to GOH's compliance with the enumerated federal laws and their conclusiveness as to the PWA. Significantly, it is beyond peradventure that the OAG was not representing the United States or any federal agencies in this Pennsylvania criminal action, and thus could not have bargained away their rights. As such, the Corporate Monitor's determinations as to GOH's compliance the DBA and DBRA, which are federal laws administered and enforced by the USDOL and U.S. Attorneys, do not foreclose additional federal proceedings. Since the federal laws are mentioned alongside the PWA without distinction, it is irrational to conclude that "shall be final" has different meanings as to the PWA on the one hand, and the federal laws on the other. Rather, the chosen language must mean that the "finality" of the decision speaks only to GOH's compliance with the conditions of

probation in this criminal case, not to any state or federal agency's right to enforce the referenced laws.

Similarly, we deem unreasonable GOH's contention that the use of the word "final" grants exclusive jurisdiction to the Corporate Monitor to adjudge civil compliance for pre-plea conduct, but permits civil and criminal enforcement during the post-plea part of the monitoring period. **See** GOH's brief at 35-36 (acknowledging that the terms of the agreement allow for it to be criminally prosecuted for covered conduct during the five-year term of probation, and highlighting that it is not seeking to enjoin civil proceedings founded upon post-plea practices). The "shall be final" clause does not suggest that the definitiveness of the Corporate Monitor's determinations as to GOH's past practices in any way differs from his findings concerning the prevailing wage decisions GOH makes while on probation. The agreement brooks no distinction between the conclusiveness of the Monitor's rulings pre- and post-plea.

Indeed, the OAG's express promise not to enforce additional **criminal** consequences for covered conduct during the look-back portion of the monitoring period implicitly signifies that the possibility of the Commonwealth seeking **civil** enforcement during that period is **not** foreclosed. **See Clarke v. MMG Ins. Co.**, 100 A.3d 271, 276 (Pa.Super. 2014) (observing that, in interpreting a contract, "the mention of one thing implies the exclusion of another thing").

Ultimately, if civil agency action and debarment were to be precluded along with additional criminal charges, and that was the main impetus for GOH agreeing to the plea bargain, it is only reasonable to presume that such a promise would have been explicitly enumerated. This is especially the case given that, at the time GOH entered its plea, it had obtained its preliminary injunction pausing **PennDOT's** debarment proceeding by arguing that **DLI** had exclusive jurisdiction to debar contractors for prevailing wage violations. Yet, "agencies" are only referred to once, and only generally, in the context of allowing the Corporate Monitor to consult with them, and debarment is not mentioned at all.

Likewise, the agreement's reference to the contingency that GOH might cease to engage in prevailing wage projects subject **for any reason** plainly contemplates cessation of such work for causes other than GOH's voluntary choice. If the parties intended that GOH would be guaranteed to be able to continue doing prevailing wage work unless it chose not to, reason dictates that the agreement would have specified that monitoring would pause in "the event GOH chooses to cease undertaking prevailing wage projects," or something of the like. We must presume that the parties chose their words carefully. *See Maisano*, 204 A.3d at 520 (Pa.Super. 2019) ("Courts do not assume that a contract's language was chosen carelessly[.]" (cleaned up)).

As for GOH's claim that DLI's proceedings are inappropriate because the OAG had conceded that GOH engaged in no criminal conduct in 2019, the trial

court noted that the OAG expressly stated in the criminal complaint that it did not believe that GOH came into full compliance with prevailing wage laws when it made changes to its methodology in 2019. Rather, although the OAG "believed that despite the changes, GOH continued to underfund prevailing wage fringe benefits," the OAG decided not to allege criminal conduct for 2019 "since GOH made efforts to correct its practices[.]" Trial Court Opinion, 4/8/24, at 3-4. Indubitably, if the OAG was convinced that GOH's post-2018 practices were fully compliant, there would have been no reason for the plea agreement to require the Corporate Monitor to look back to January 1, 2019, in evaluating GOH's methodology.[7]

In conclusion, the import of the provision that the Corporate Monitor's determinations are final, when viewed objectively in the context of the surrounding circumstances and the agreement as a whole, is that neither GOH nor the OAG could go back to the criminal trial court to litigate and obtain a ruling on the accuracy of each determination by the Corporate Monitor regarding GOH's compliance with the civil prevailing wage laws. While the agreement includes a guarantee that neither GOH nor its principals would face

_____

[7] Objectively, it appears that this look-back was designed to correct past mistakes or malfeasance that might have gone unredressed in the absence of a complaint to DLI. However, if GOH wants to argue to DLI that the OAG's purported representations, made on an unspecified date in June or July of 2021, mean that DLI is estopped to conclude that any post-2018 violations were intentional, thus taking debarment off the table, it is free to do so in the administrative forum.

further **criminal** charges based upon its conduct before August 2021, we discern no term evincing a promise that GOH was immune from civil consequences for prevailing wage violations allegedly occurring in 2019 through 2022. Therefore, we affirm the trial court order denying GOH's motion to grant specific enforcement of the plea agreement by enjoining the pending DLI proceeding.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/5/2025